UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDGAR FERNANDEZ, on behalf of himself,
individually, and on behalf of all others
similarly-situated,

                    Plaintiff,

        -against-

PINNACLE GROUP NY LLC,
and JOEL WIENER, individually,

                    Defendants.

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED:  3/15/2023

21 Civ. 10702 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Named-Plaintiff, Edgar Fernandez, and opt-in Plaintiffs Julio Concepcion, Franklin Lara,

Igor Turcios, Juan Mena, Fernando Mercado, and Tony Fernandez, *see* ECF Nos. 5–8, 12, 38,

bring this collective action against Defendants Pinnacle Group NY LLC ("Pinnacle") and Joel

Wiener,[1] under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), alleging that

Defendants failed to compensate Plaintiffs, superintendents at residential buildings managed by

Defendants, for the hours that they worked over forty hours in a week. Compl. ¶¶ 29–35, ECF

No. 1. Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6), or in the alternative, to compel arbitration pursuant to

§§ 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3–4. ECF No. 35; *see also* Defs.

Mem., ECF No. 36. For the reasons stated below, Defendants' motion is DENIED.

---

[1] Plaintiffs' request to correct the spelling of Joel Wiener's name in the caption is GRANTED. *See* Pls. Opp. at 1 n.1, ECF No. 39.

# BACKGROUND

I.    <u>Factual Background</u>[2]

Wiener is the owner and day-to-day overseer of Pinnacle, a New York limited liability company that "provides property management services to approximately 155 residential buildings throughout New York."  Compl. ¶¶ 2, 10, 17.  He is responsible for making personnel-related decisions, including setting Pinnacle employees' hours, rates, and methods of pay.  *Id.* ¶ 10.  Wiener also maintains the employment records for all Pinnacle employees.  *Id.*

Since 2004, Fernandez has worked as a live-in, on-site superintendent at a residential building managed by Defendants.  *Id.* ¶ 18.  In his role, Fernandez ensures the cleanliness of common areas, responds to tenant complaints and concerns, repairs and paints the walls, doors, and ceilings, and installs and repairs cabinets, sinks, and other fixtures.  *Id.* ¶ 19.  Throughout Fernandez's employment,[3] Defendants have scheduled him to work—and he has worked—over forty hours a week.  *Id.* ¶¶ 20–21.  Specifically, Fernandez generally works fifty-hour weeks, and in some weeks, Defendants have required that he work fifty-four or fifty-eight hours.  *Id.* ¶ 21.  Further, in addition to regularly scheduled shifts, Fernandez must "be on call and available to work during every hour of every day during any day of the week."  *Id.* ¶ 22.  Defendants' tenants often call Fernandez outside of his scheduled work hours to "tend to their concerns and emergency maintenance issues that require immediate attention."  *Id.*  And, Defendants require Fernandez to respond to these concerns within minutes of receiving the call.  *Id.*

---

[2] The following facts are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

[3] Defendants contend that "[d]iscovery will show that Pinnacle is not the entity that employed [Fernandez and the other] Plaintiffs."  Defs. Mem. at 3 n.2.  But, at this stage, the allegations in the complaint are assumed to be true. *See Fin. Guar. Ins.*, 783 F.3d at 398.

Although Fernandez works over forty hours "virtually each week," Defendants pay him an hourly rate of $22 per hour for only the first forty hours that he works in a week. *Id.* ¶¶ 3, 24. Therefore, Defendants have not paid Fernandez at all for "any hours that he has worked or has been engaged to wait to work" in excess of forty hours in a week. *Id.* ¶ 24. Defendants have treated the other Plaintiffs in a similar manner. *Id.* ¶ 26.

II.    Collective Bargaining Agreements ("CBAs")[4]

Fernandez, Concepcion, Lara, Turcios, and Mena are unionized employees represented by the Service Employees International Union, Local 32BJ. *See* Levin Decl. ¶ 2. Mercado is a unionized employee represented by Local 670, Stationary Engineers, Firemen, Maintenance and Building Service Union. *See id.* ¶ 3. Pinnacle entered into CBAs with Local 32BJ (the "Local 32BJ CBA"), *see* Local 32BJ CBA, ECF No. 37-1; *see also* ECF Nos. 37-3–37-6 (same), and Local 670 (the "Local 670 CBA"), *see* Local 670 CBA, ECF No. 37-2. Tony Fernandez is not a member of any union. *See* Pls. Opp. at 1 n.2.

The CBAs set forth terms and conditions of the unionized Plaintiffs' employment, including overtime hourly rates, wage increases, and the length of the standard workweek. *See, e.g.*, Local 32BJ CBA art. IX; Local 670 CBA ¶¶ 3–4. Both CBAs provide that employees are entitled to overtime in excess of a normal workday of eight hours or a normal workweek of forty hours, whichever is greater. *See* Local 32BJ CBA art. IX, § 2(a); Local 670 CBA ¶ 3.

The CBAs also contain mandatory dispute resolution procedures. The Local 32BJ CBA states, in relevant part:

---

[4] "When jurisdictional facts are in dispute, the district court may consider materials outside the pleadings, including affidavits and other written materials." *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 202 (S.D.N.Y. 2019) (citation and quotation marks omitted). Plaintiffs do not dispute the accuracy of the declaration of Gabrielle Levin (the "Levin Declaration"), Levin Decl., ECF No. 37, or the authenticity of the CBAs appended to the Levin Declaration.

A grievance shall first be taken up directly between the Employer and the Union. Grievances shall be resolved, if possible, within seventy-two (72) hours after they are initiated, and if not so resolved, shall be promptly submitted to the Office of the Contract Arbitrator. . . .

Any dispute or grievance between the Employer and the Union which cannot be settled directly by them shall be submitted to the Office of the Contract Arbitrator, . . .

Where a failure to compensate overtime work can be unequivocally demonstrated through employer payroll records, the Union may grieve the failure to compensate such overtime work for the three[-]year period prior to the filing of the grievance. . . .

A Contract Arbitrator shall have the power to decide all differences arising between the parties to this Agreement as to interpretation, application or performance of any part of this Agreement[.]

Local 32BJ CBA art. V, §§ 1–2.  Likewise, the Local 670 CBA states, in relevant part:

In the event of any dispute, grievance, difference or controversy between the Employer and the Union or concerning any employee, the matter of dispute, grievance, difference or controversy shall be submitted for arbitration to an Arbitrator designated by the New York State Public Employment Relations Board ("PERB"), New York.  The decision and/or award shall be final and binding.  In the event that a party fails to attend before the Arbitrator after due notice, the said party waives all rights under the Civil Practice Laws and Rules of the State of New York, and full authority is hereby granted to the Arbitrator to forthwith proceed with said arbitration and issue a final award.

Local 670 CBA ¶ 15.

III.    Procedural History

On December 14, 2021, Fernandez filed a collective action complaint on behalf of himself and all others similarly situated, alleging that Defendants violated the FLSA's overtime provisions, 29 U.S.C. § 207(a), by failing to compensate him with overtime pay for the hours that he worked beyond forty hours in a week.  Compl. ¶¶ 1, 3.  That same day, Concepcion, Lara, Turcios, and Mena filed their consents to join the action, ECF Nos. 5–8, and the next day, Mercado filed his consent to join the action, ECF No. 12.  *See* 29 U.S.C. § 216(b).

On May 3, 2022, Defendants moved to dismiss the complaint under Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, to compel arbitration pursuant to

§§ 3 and 4 of the FAA, 9 U.S.C. §§ 3–4.  ECF No. 35; *see* Defs. Mem.  On May 24, 2022,

Plaintiffs filed their opposition to the motion to dismiss.  *See* Pls. Opp.  That same day, Tony

Fernandez filed his consent to join the action.  ECF No. 38.  On July 28, 2022, Local 32BJ filed

an *amicus* brief in support of Plaintiffs.  ECF No. 50.  To date, Plaintiffs have not moved for

conditional certification.

## DISCUSSION

I.    <u>Motion to Dismiss</u>

A.  Legal Standards

Under Rule 12(b)(1), a court must dismiss a complaint for lack of subject matter

jurisdiction if the district court lacks the statutory or constitutional power to adjudicate the

action.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "In resolving a

motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the

complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting

jurisdiction."  *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (citations and quotation

marks omitted).  But, a court is not limited to the face of the complaint and may refer to evidence

outside the pleadings, such as declarations, to resolve the jurisdictional issue.  *See State Emps.*

*Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 (2d Cir. 2007).  The plaintiff has the burden

of proving by a preponderance of the evidence that subject matter jurisdiction exists.  *Makarova*,

201 F.3d at 113.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual

allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*  The Court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

       B.   Analysis

Defendants argue that the Court should dismiss the complaint because Plaintiffs' FLSA overtime claim is preempted by § 301 of the Labor Management Relations Act ("LMRA") and because Plaintiffs fail to allege exhaustion of their CBA remedies.  Defs. Mem. at 6.

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).  Claims governed by § 301 "must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law."  *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (quotation marks and citation omitted).  "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quotation marks and citation omitted).  However, "[n]ot every suit concerning employment or tangentially involving a CBA, . . . is preempted by [§] 301."  *Vera*, 335 F.3d at 114; *see Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 421 (S.D.N.Y. 2013).

"The boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive." *Wynn v. AC Rochester,* 273 F.3d 153, 158 (2d Cir. 2001) (per curiam).  Courts consider whether the "legal character" of the claim is "truly independent of rights under the CBA" and whether the claim is "substantially dependent on analysis of a CBA." *Kaye*, 975 F. Supp. 2d at 421 (cleaned up).

Here, Defendants argue that Plaintiffs' FLSA overtime claim is preempted by the LMRA because the claim requires interpretation of the CBAs.  Defs. Mem. at 8.  Specifically, Defendants argue that "[t]he overtime provisions contained in the CBAs explicitly modify the FLSA's requirements concerning overtime." *Id.*  "Under the FLSA, overtime is due for all hours worked in excess of [forty] hours per week . . . [but] [u]nder the CBAs, . . . Plaintiffs are due overtime for all hours worked in excess of [eight] hours per day *or* [forty] hours per week, whichever is greater." *Id.*  Therefore, Defendants contend, Plaintiffs' claim is "substantially dependent on analysis of" their CBAs.  *Caterpillar Inc.*, 482 U.S. at 394; *see also Kaye*, 975 F. Supp. 2d at 421.

The Court disagrees and concludes that Plaintiffs' FLSA overtime claim is not preempted by the LMRA.  Plaintiffs only bring a claim to recover overtime pay for hours worked in excess of forty hours a week.  *See* Compl. ¶ 30.  Plaintiffs further confirm this in their opposition to Defendants' motion to dismiss.  *See* Pls. Opp. at 9 ("Plaintiffs are not making a claim that they are owed overtime simply for working more than eight hours in a day, [so] there is no need to interpret the CBAs[.]" (emphasis omitted)).  Plaintiffs have made the conscious decision to forgo their claims for overtime pay for hours worked more than eight hours in a day.  Accordingly, Plaintiffs' claims fall within the four corners of the FLSA and do not require any interpretation

or analysis of the CBAs outside of "mere referral to the CBA for information such as rate of pay." *Vera*, 335 F.3d at 115.[5]

The Court also rejects Defendants' argument that Plaintiffs were required to allege exhaustion of their CBA remedies under Rule 12(b)(6).  Although the FAA generally evinces a presumption in favor of construing the scope of an arbitration agreement broadly, "an exception to the scope presumption applies in the context of a union's waiver of its members' right to bring statutory claims in court." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019).  Employees' rights to overtime pay under the FLSA are separate and distinct from employees' contractual rights arising out of an applicable CBA.  *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 745–46 (1981).  "[W]hen the dispute involves the violation of statutory rights under the FLSA, absent a 'clear and unmistakable waiver' . . . an employee is not required to exhaust the grievance procedure prior to bringing a federal lawsuit." *Isaacs v. Cent. Parking Sys. of N.Y., Inc.*, No. 10 Civ. 5636, 2012 WL 957494, at *3 (E.D.N.Y. Feb. 27, 2012) (cleaned up); *see Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 (1998).  The "clear and unmistakable" standard "require[s] specific references in the CBA either to the statutes in question or to statutory causes of action generally." *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 84 (2d Cir. 2016).  This exacting standard "ensures that employees' right to bring statutory claims in court is not waived by operation of confusing, 'very general' arbitration clauses." *Abdullayeva*, 928 F.3d at 223 (citation omitted).

---

[5] This case is thus distinguishable from *Freeman v. River Manor Corp.*, where the court held that the plaintiff's FLSA overtime claim was preempted.  No. 17 Civ. 5162, 2019 WL 3578432, at *3–4 (E.D.N.Y. Aug. 5, 2019).  In that case, the CBA provided for a [thirty-five]-hour week, and the court determined that "it would need to first address whether [p]laintiff was entitled to contractual overtime for hours worked between [thirty-five] and [forty] per week" and that question was "a factual dispute arising under the CBA." *Id.* at *4 (citation omitted).  There is no similar question in this case.

As discussed above, Plaintiffs' FLSA claim is a statutory claim independent of the CBAs. The CBAs do not contain a "clear and unmistakable waiver" of the right to bring those claims in federal court.  First, neither of the CBAs' arbitration provisions specifically references the FLSA. *See Lawrence*, 841 F.3d at 84; *see also* Local 32BJ CBA art. V, §§ 1–2; Local 670 CBA ¶ 15. Second, neither arbitration provision references "statutory causes of action generally." *Lawrence*, 841 F.3d at 84; *see also* Local 32BJ CBA art. V, §§ 1–2; Local 670 CBA ¶ 15.  The "very general" language used in the CBAs of "any dispute or grievance," Local 32BJ CBA art. V, § 1, and "any dispute, grievance, difference or controversy," Local 670 CBA ¶ 15, does not satisfy the exacting "clear and unmistakable" standard for waiving Plaintiffs' statutory rights under the FLSA.  *See Lawrence*, 841 F.3d at 84–85; *see also Wright*, 525 U.S. at 80.  Therefore, Plaintiffs were not required to exhaust the grievance procedure prior to bringing a federal lawsuit. *See Isaacs*, 2012 WL 957494, at *3.

Accordingly, Defendants' motion to dismiss is DENIED.

II.   Motion to Compel Arbitration

A.  Legal Standards

Through the FAA, "Congress has declared a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999).  Consistent with this purpose, § 4 of the FAA requires courts to compel arbitration in accordance with the terms of an arbitration agreement, provided that there is no issue regarding its formation or validity.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  Mandatory arbitration clauses in CBAs are enforceable unless Congress prohibits those claims from being arbitrated.  *See 14 Penn Plaza LLC v. Pyett,* 556 U.S. 247, 257 (2009).  Here, as a threshold matter, the parties do not dispute that valid

arbitration agreements exist in both CBAs, *see Abdullayeva*, 928 F.3d at 223–24, or that

Plaintiffs' FLSA claim can be subject to arbitration, *see Severin v. Project OHR, Inc.*, No. 10

Civ. 9696, 2011 WL 3902994, at *2 (S.D.N.Y. Sept. 2, 2011); Pls. Opp. at 16.  The relevant

question is whether the scopes of the arbitration provisions encompass Plaintiffs' FLSA claims.

*Abdullayeva*, 928 F.3d at 224.  When considering a motion to compel, courts may consider

materials outside the complaint, including the parties' CBAs.  *See, e.g.*, *HBC Sols., Inc. v. Harris

Corp.*, No. 13 Civ. 6327, 2014 WL 6982921, at *1 (S.D.N.Y. Dec. 10, 2014).  The party

"seeking to avoid arbitration generally bears the burden of showing the agreement to be

inapplicable . . . ."  *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010).

###### B.  Analysis

Defendants argue that the Court should compel Plaintiffs to arbitration because (1) the

CBA delegates this initial question of arbitrability to the arbitrator; and (2) Plaintiffs' FLSA

claim is arbitrable under both CBAs.  Defs. Mem. at 12–16.  For substantially the same reasons

stated above, *see supra* Section I.B., the Court rejects Defendants' second argument because the

two CBAs do not contain "clear and unmistakable waiver[s]" of Plaintiffs' right to bring their

FLSA claim in federal court.  *Lawrence*, 841 F.3d at 84; *see also* Local 32BJ CBA art. V, §§ 1–

2; Local 670 CBA ¶ 15.  Therefore, the CBAs do not "clearly and unmistakably encompass"

Plaintiffs' statutory claims, and the Court will not compel arbitration on this ground.

*Abdullayeva*, 928 F.3d at 223.

As to Defendants' first argument about the delegation of arbitrability, "[j]ust as the

parties may elect through their contract to have arbitrators (rather than a court) resolve categories

of disputes between them, they may similarly contract to have arbitrators (rather than a court)

decide whether a particular dispute is to be arbitrated under the terms of the contract."  *Metro.*

*Life Ins. Co. v. Bucsek*, 919 F.3d 184, 189–90 (2d Cir. 2019).  When parties have contracted to submit the question of the arbitrability of a dispute to arbitrators, courts must respect and enforce that contractual choice.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).  However, "threshold questions of arbitrability, such as whether the arbitration agreement applies to a particular dispute, presumptively should be resolved by the court and not referred to the arbitrator."  *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021) (quotation marks omitted) (citing *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250–51 (2d Cir. 2019)).  Courts retain authority over the question of arbitrability unless the parties "clearly and unmistakably" provide that the question should go to arbitrators.  *Metro. Life*, 919 F.3d at 190 (citation omitted); *see DDK Hotels*, 6 F.4th at 317.  This "clear and unmistakable evidence" requirement reflects a departure from the FAA's presumption in favor of arbitration. *See DDK Hotels*, 6 F.4th at 317.  "Where . . . the question is *who* should decide arbitrability, there is a presumption that the question should be resolved by the court."  *Id.*

Here, neither CBA expresses "clear and unmistakable evidence" that the parties intend the question of arbitrability to go to the arbitrator.  Indeed, both CBAs are silent on the issue of arbitrability.  *See generally* Local 32BJ CBA art. V, §§ 1–2; Local 670 CBA ¶ 15.  Of course, "rarely do arbitration agreements directly state whether the arbitrator or the court will decide the issue of arbitrability."  *Metro. Life*, 919 F.3d at 191.  And, "[i]n the absence of language that directly addresses the issue, courts must look to other provisions of the agreements to see what contractual intention can be discerned from them."  *Id.*  When looking to other provisions of the CBA to discern intent about arbitrability, "[b]road language expressing an intention to arbitrate all aspects of all disputes supports the inference of an intention to arbitrate arbitrability," and "the clearer it is from the agreement that the parties intended to arbitrate the particular dispute

11

presented, the more logical and likely the inference that they intended to arbitrate the arbitrability of the dispute." *Id.*; *see DDK Hotels*, 6 F.4th at 318.

Neither of the CBAs' arbitration provisions expresses an intention to "arbitrate all aspects of all disputes." *Metro. Life*, 919 F.3d at 191; *see* Local 32BJ CBA art. V, § 1; Local 670 CBA ¶ 15. And, for the reasons stated above, *see, e.g.*, *supra* Section I.B., the two CBAs at issue do not contain "clear and unmistakable waiver[s]" of the right to bring statutory claims in federal court. *Lawrence*, 841 F.3d at 84; *see also* Local 32BJ CBA art. V, §§ 1–2; Local 670 CBA ¶ 15. Therefore, it is not "clear[] . . . from the agreement[s] that the parties intended to arbitrate the particular dispute presented," and so the Court cannot infer that "they intended to arbitrate the arbitrability of the dispute." *Metro. Life*, 919 F.3d at 191. Defendants have not satisfied the "clear and unmistakable" standard to overcome the presumption that the threshold question of arbitrability should be resolved by the Court. *DDK Hotels*, 6 F.4th at 317.

Accordingly, Defendants' motion to compel arbitration is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or, in the alternative, to compel arbitration, is DENIED. The Clerk of Court is directed to correct the spelling of Joel Wiener's name in the caption and to terminate the motions at ECF Nos. 35 and 50.

SO ORDERED.

Dated: March 15, 2023
       New York, New York

_____
ANALISA TORRES
United States District Judge