UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDGAR FERNANDEZ, on behalf of himself, individually, and on behalf of all others similarly-situated,

                Plaintiff,

-against-

PINNACLE GROUP NY LLC, and JOEL WIENER, individually,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _05/07/2024_

21 Civ. 10702 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Edgar Fernandez, brings this collective action on behalf of himself and others similarly situated against Defendants, Pinnacle Group NY LLC ("Pinnacle Group") and Joel Wiener, under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a). Plaintiffs, superintendents at residential buildings purportedly managed by Defendants, allege that Defendants failed to pay them overtime wages. Compl. ¶¶ 29–35, ECF No. 1. Now before the Court are several motions. Plaintiffs move to conditionally certify the FLSA class. ECF No. 70. The parties cross-move for summary judgment. ECF Nos. 86, 92. And, Plaintiffs move for sanctions against Defendants—striking certain documents from the summary-judgment record or, in the alternative, reopening discovery. Pl. Sanctions Mem., ECF No. 120. For the reasons stated below, Plaintiffs' motion for conditional class certification is GRANTED, their cross-motion for summary judgment is GRANTED IN PART and DENIED IN PART, and their sanctions motion is GRANTED IN PART and DENIED IN PART. Defendants' motion for summary judgment is DENIED.

# BACKGROUND[1]

Plaintiffs are current and former superintendents of residential buildings in Manhattan and the Bronx. Def. 56.1 ¶ 3, ECF No. 99. In general, superintendents' duties include checking the cleanliness of the buildings' interiors and exteriors, addressing any complaints from residents, and dealing with work orders. Pl. 56.1 ¶¶ 31–32, ECF No. 103.

The parties dispute who manages the buildings at which Plaintiffs work or worked: Pinnacle Group (the named Defendant) or its "affiliate" Pinnacle Managing Co. LLC (a non-party). Def. 56.1 ¶¶ 3, 9. Wiener is the managing member of both Pinnacle Group and Pinnacle Managing Co. *Id.* ¶¶ 5, 14. He has the authority to hire and fire superintendents, make decisions regarding promotions, and approve overtime and vacation requests. Pl. 56.1 ¶¶ 3–4, 40. He also "makes staffing determinations for each building, . . . including whether the building will have a porter," and "at times signs the collective bargaining agreement[s]" for superintendents that are in unions. *Id.* ¶¶ 5–6. Defendants claim that Wiener performs these duties in his role as managing member of Pinnacle Managing Co., not Pinnacle Group. *Id.* ¶¶ 3–7.

From this dispute over management spring many others. A Pinnacle entity—either Pinnacle Group or Pinnacle Managing Co.—employs twelve property managers who are responsible for, among other things, "supervising daily operations of multiple residential buildings and the individuals who work in them." Def. 56.1 ¶ 20. Harry Hirsch, Abidin Radoncic, and Rasim Toskic are Pinnacle property managers who oversee the superintendents,

---

[1] The facts in this section are taken from the parties' Rule 56.1 statements, responses, and declarations, unless otherwise noted. Disputed facts are so noted. Citations to a paragraph in a Rule 56.1 statement also include the opposing party's response. "[W]here there are no citations[,] or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (alteration omitted). On a motion for summary judgment, the facts must be read in the light most favorable to the non-moving party. *Id.* at 69.

including, at times, Plaintiffs. Pl. 56.1 ¶¶ 8–17. Wiener meets with property managers once or twice a week to discuss whether superintendents are properly maintaining their buildings, and issues warnings when they are not. *Id.* ¶¶ 36–37. A Pinnacle entity processes superintendents' timesheets, and the payroll department directs questions about those timesheets to Wiener. Def. 56.1 ¶ 87.

On December 14, 2021, Fernandez filed a putative collective action complaint, alleging that Defendants violated the FLSA's overtime provisions by failing to pay him overtime wages. Compl. ¶¶ 1, 3. Julio Concepcion, Franklin Lara, Igor Turcios, Juan Mena, Juan Montoya, Zumreta Toskic, and Daniel Simon—superintendents in other Pinnacle-managed buildings—have opted into the action.[2] ECF Nos. 5–8, 41, 47, 141; *see* 29 U.S.C. § 216(b).

Plaintiffs moved for conditional class certification on May 10, 2023. ECF No. 70. In support of that motion, Plaintiffs argue that Defendants "paid them according to a common practice of willfully refusing to pay them overtime compensation for hours that they worked over forty in a week, in violation of the FLSA." Pl. Cert. Mem. at 18, ECF No. 71.

Defendants now move for summary judgment, chiefly contending that Plaintiffs have not established that Wiener and Pinnacle Group are their employers. *See* Def. MSJ Mem., ECF No. 87. Plaintiffs cross-move for summary judgment, seeking rulings that (1) Defendants are Plaintiffs' employers; (2) Defendants did not act with a good-faith belief that their actions were lawful; (3) Defendants' violations of the FLSA were willful; and (4) Defendants are liable for failure to pay the approximately 1,079 overtime hours Plaintiffs reported on their timesheets. Pl. MSJ Mem., ECF No. 93; *see also* Pl. MSJ Opp., ECF No. 100. Plaintiffs also move to strike

---

[2] Plaintiffs Fernando Mercado and Tony Fernandez also opted in, ECF Nos. 12, 38, and accepted offers of judgment on August 15 and 23, 2023. *See* ECF Nos. 109, 112. Simon opted in after the summary judgment motions were briefed. ECF No. 141.

3

four documents implicating Pinnacle Managing Co., or, in the alternative, to take additional discovery related to Pinnacle Managing Co. at Defendants' expense. Pl. Sanctions Mem. at 10–11.

## DISCUSSION

I. FLSA Conditional Certification

A. Legal Standard

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To that end, under Section 216(b), employees may maintain actions to recover unpaid wages collectively where the employees are "similarly situated" and give "consent in writing to become . . . a party [to the action] and such consent is filed [with the Court]." 29 U.S.C. § 216(b). Putative class members must opt in to participate in an FLSA collective action.

Courts in this Circuit use a two-step method to assess whether to certify a collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010). First, plaintiffs must "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Id.* at 555 (quotation marks and citation omitted). "The purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). The Court should not examine "whether there has been an actual violation of law," but rather

"whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *accord Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 516 (2d Cir. 2020). "Conditional class certification is appropriate . . . where all putative class members are employees of the same [] enterprise and allege the same types of FLSA violations." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007).

At the second stage, which occurs after plaintiffs have opted in and there has been discovery, the district court will "conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs." *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361, 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010). If the court determines that the plaintiffs are not similarly situated, the collective action will be decertified, and the opt-in plaintiffs' claims will be dismissed without prejudice. *See Myers*, 624 F.3d at 555.

Where, as here, a conditional certification motion is made after some discovery has occurred, some courts in this Circuit have applied a "modest plus standard." *See Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 481–82 (S.D.N.Y. 2016) (collecting cases). Under this standard, "the Court will look beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding that the body of evidence is necessarily incomplete." *Id.* (citation omitted). "[E]ven under the modest-plus rubric," however, "courts do not weigh the merits of the underlying claims." *Sydney v. Time Warner Ent.-Advance/Newhouse P'ship*, No. 13 Civ. 286, 2022 WL 474146, at *6 (N.D.N.Y. Feb. 16, 2022). Accordingly, courts "generally grant conditional certification because the determination that plaintiffs are similarly situated is merely a preliminary one." *Flood v.*

*Carlson Restaurants Inc.*, No. 14 Civ. 2740, 2015 WL 260436, at *2 (S.D.N.Y. Jan. 20, 2015) (quotation marks and citation omitted).

      B.  Application

Although the parties have now completed discovery, discovery was ongoing when Plaintiffs filed the conditional certification motion. *See* ECF No. 69. The parties agree, therefore, that the "modest-plus" level of scrutiny could apply. Pl. Cert. Mem. at 16; Def. Cert. Opp. at 11, ECF No. 78.

Plaintiffs have met their factual burden to support conditional certification under this standard. The opt-in Plaintiffs all testified that they work, or have worked, as superintendents in buildings managed by a Pinnacle entity, and performed similar daily duties, including maintenance, groundskeeping, garbage disposal, and cleaning. *See* Pl. Cert. Mem. at 5–6 & n.2. Plaintiffs also stated that they were each assigned forty-hour weekly schedules by Defendants,[3] but were expected to handle emergencies and duties outside of those hours.[4] And, they testified that that Defendants refused to pay overtime wages for these hours—or to even accept timesheets with more than forty hours recorded. *See, e.g.*, Concepcion Dep. at 65:17–66:17, ECF No. 72-8 ("[W]e were given a letter with our paychecks stamped on it stating if you put more than forty hours on your timesheets, you will not get a paycheck"); Turcios Dep. at 24:10–18, ECF No. 72-7 (recalling meeting where Radoncic told superintendents that "[i]f you put more than 40 hours, you're not going to get your check"); E. Fernandez Dep. at 24:15–25, ECF No. 72-2 (recounting similar meeting with Hirsch). The testimony supports Plaintiffs' claims that Defendants

---

[3] *See, e.g.,* Lara Dep. at 33:13–17, ECF No. 72-3; Mena Dep. at 36:2–11, ECF No. 72-9; Montoya Dep. at 51:3–52:21, ECF No. 72-10.

[4] *See, e.g.*, Mercado Dep. at 10:11–13:10, ECF No. 72-6; Toskic Dep. at 17:14–18:8, ECF No. 72-12; T. Fernandez Dep. at 20:9–23:2, ECF No. 72-11.

implemented a company-wide policy to deprive superintendents employed at Pinnacle-managed buildings of earned overtime compensation.

In response, Defendants argue that "[f]our Plaintiffs concede that they have been paid for overtime, and pay records reflect overtime payments to three other Plaintiffs." Def. Cert. Mem. at 11–12. But four of the opt-in Plaintiffs—Concepcion, Lara, Mena, and Toskic—were only paid overtime after this lawsuit commenced on December 14, 2021. *See id.* at 12–13. Defendants do not argue that they paid these Plaintiffs for any overtime prior to that date. And, for the three others—Turcios, Montoya, and Tony Fernandez—Plaintiffs are correct that the fact that Defendants paid "for *some* overtime work," at some point in their employment, "does not mean that they paid them for *all* such work pursuant to a common policy not to do so." Pl. Cert. Reply at 3–4, ECF No. 82. At the conditional certification stage, Plaintiffs need not prove that Defendants never complied with the law—only that there existed "a 'de facto' policy which, in practice, resulted in a pattern of FLSA violations." *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *10 (S.D.N.Y. Sept. 20, 2013). Plaintiffs have met this burden.

Defendants' remaining arguments attack the merits of the case or raise factual disputes, which are not issues that can be addressed at this stage. *See Flood*, 2015 WL 260436, at *5. Accordingly, because Plaintiffs have made the requisite factual showing, the motion for conditional collective-action certification is GRANTED.

To enable "similarly situated" potential plaintiffs to opt in, the district court has discretion to authorize notice. *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). "Courts in this circuit have generally held that where willfulness is in dispute, a three year statute of limitations applies at the conditional certification stage." *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012); *see also id.* at 356–57 (finding

that, "in an abundance of caution, the notice should be sent to all relevant employees who worked for the Defendants on or after" the date three years before the complaint was filed). Plaintiffs' request to "distribute notice to all supers whom Defendants employed at any time between December 14, 2018 and the present" is, therefore, GRANTED.

By **May 21, 2024**, Defendants shall produce to Plaintiffs a computer-readable list of all names, addresses, telephone numbers, and e-mail addresses for all potential opt-in plaintiffs, along with their primary language(s) spoken and their approximate dates of employment. *See Portilla v. Bridgehampton Stone, Inc.*, No. 17 Civ. 2549, 2019 WL 1128364, at *9 (E.D.N.Y. Mar. 12, 2019). Plaintiffs' counsel is authorized to send notices and reminder notices to potential plaintiffs, in any identified primary language of the potential class members, via mail and text messages within sixty days of the date of this order. The notices and reminders shall include the contact information for Defendants' counsel. *Escano v. N & A Produce & Grocery Corp.*, No. 14 Civ. 4239, 2015 WL 1069384, at *2 (S.D.N.Y. Mar. 11, 2015) ("Courts regularly permit inclusion of defense counsel's contact information on such notices."); Def. Cert. Opp. at 25.[5] Otherwise, the notices and reminders may take Plaintiffs' proposed forms. ECF Nos. 72-18, -19, -20.

---

[5] Following the majority of courts in this Circuit, the Court DENIES Defendants' request that opt-in forms be sent directly to the Clerk of Court, instead of to Plaintiffs' counsel. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 567 (S.D.N.Y. 2015); Def. Cert. Mem. at 25–26.

Plaintiffs' request that the Court equitably toll the statute of limitations as to any additional opt-in plaintiffs is, likewise, DENIED. Pl. Cert. Mem. at 26–28. Although Plaintiffs are correct that the delay in deciding this motion may merit equitable tolling, "it is not yet clear whether or not any potential plaintiffs will be barred from this action due to a delay in notice." *Yap*, 146 F. Supp. 3d at 566. Individual plaintiffs may seek tolling upon opting in and demonstrating its applicability to his or her case. *Id.*

II.     Motion to Strike or Reopen Discovery

Plaintiffs request an order "striking four documents that Defendants submitted not just after the close of discovery, but, for three of the documents, after reviewing Plaintiffs' moving and opposition summary judgment briefs." Pl. Sanctions Mem. at 1. In the alternative, Plaintiffs ask "to take additional discovery related to these late disclosures and amendments, at Defendants' expense." Id. at 10–11.

The four documents at issue are: (1) Defendants' Second Amended Responses and Objections to Plaintiffs' First Set of Interrogatories, served on September 1, 2023, ECF No. 120-8; (2) Defendants' Second Amended Rule 26 Initial Disclosures, also served on September 1, 2023, ECF No. 120-7; (3) the Declaration of Svetlana Irlinskiy, dated August 21, 2023, served with Defendants' opposition brief on August 21, 2023, ECF No. 104; and (4) the Declaration of Joel Wiener, dated July 28, 2023, served with Defendants' opening summary judgment brief on July 28, 2023, ECF No. 89. See Pl. Sanctions Mem. at 1–2. Plaintiffs contend that Defendants concealed, until after the close of fact discovery on May 22, 2023, the critical fact that non-party Pinnacle Managing Co.—not Defendant Pinnacle Group—managed the buildings in which Plaintiffs worked. Id. at 6–7. They further argue that Defendants failed to disclose Svetlana Irlinskiy as a potential witness, and that Wiener's declaration "directly contradicts his prior deposition testimony." Id. at 7–9.

A. Legal Standard

Federal Rule of Civil Procedure 26(e)(1)(A) provides that a party who has responded to an interrogatory or request for admission "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not

9

otherwise been made known to the other parties during the discovery process or in writing." Rule 26(a)(1)(A), moreover, requires a party to provide, "without awaiting a discovery request, . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses."

Rule 37 establishes sanctions for a party's failure to comply with Rule 26. Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard, . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure," or "impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(A), (C).

"[T]he Second Circuit has held that preclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" *Pal v. N.Y. Univ.*, No. 06 Civ. 5892, 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008) (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)). In determining whether to impose sanctions, district courts consider "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (cleaned up).

In addition, "[a] party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the

evidence during discovery." *Thieriot v. Jaspan Schlesinger Hoffman, LLP*, No. 07 Civ. 5315, 2010 WL 4038765, at *6 (E.D.N.Y. Sept. 30, 2010) (citation omitted). Courts determining whether to reopen discovery examine six factors:

> (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence.

*Id.* (citation omitted); *accord Bakalar v. Vavra*, 851 F. Supp. 3d 489, 493 (S.D.N.Y. 2011).

B. Application

Plaintiffs argue that Defendants' second amended interrogatory responses and Rule 26 disclosures improperly "attempt to shift liability to a non-party affiliate of Pinnacle Group," after the close of fact discovery and two rounds of summary judgment briefing. Pl. Sanctions Mem. at 7. Plaintiffs also contend that Defendants only disclosed Svetlana Irlinskiy, an employee in Pinnacle Managing Co.'s. payroll department, as a potential witness in their second amended disclosures. *Id.* at 7–8. Defendants reply that they "promptly amended their discovery responses" after Plaintiffs' summary judgment opposition papers "alerted Defendants" to the issues, and that, in any case, Plaintiffs were on notice of Pinnacle Managing Co. and Irlinskiy. Def. Sanctions Opp. at 14–16, ECF No. 133.

It is true that some documents disclosed in discovery may have put Plaintiffs on inquiry notice as to the existence of both Irlinskiy and the management company. *See* Def. Sanctions Opp. at 15. The collective bargaining agreements governing the employment of the unionized Plaintiffs list the "Managing Agent" as "Pinnacle Management Co. LLC," and Lara's timesheets were labeled "Pinnacle Managing Co. LLC." *See* ECF No. 88-15 at 39; ECF No. 88-27 at 39; ECF No. 134-1. As to Irlinskiy, Defendants note that they "produced approximately 117

documents to Plaintiffs that included references to Ms. Irlinskiy," Def. Sanctions Mem. at 13, and that Plaintiffs' counsel questioned Wiener about Irlinskiy during his deposition. *See* Wiener Dep. at 50:17–23, ECF No. 88-1 (stating that Irlinskiy "works in the payroll department" at "Pinnacle").

Still, the Court is troubled by Defendant's late-breaking "clarification" that Pinnacle Managing Co. is, in fact, the employer of Plaintiffs' direct and indirect supervisors. *Id.* at 14. Prior to their second amended responses, Defendants consistently identified Pinnacle Group as the property managers' employer and described Wiener as Pinnacle Group's CEO, with no mention of Pinnacle Managing Co. *See, e.g.*, ECF No. 120-2 at 1, 8; ECF No. 120-4 at 1, 8. Wiener testified without qualification that he hired Pinnacle property managers and supervisors, again failing to mention that he did so on behalf of Pinnacle Group's affiliate. *See* Wiener Dep. at 43:23–46:15, 52:5–7, 117:2–7. Given that Wiener evidently controls both Pinnacle entities, Defendants' suggestion that they only became aware of this relevant distinction after Plaintiffs filed their opposition strains credulity. Nor was the omission harmless. Because the identity of Plaintiffs' employer(s) is a pivotal issue in this litigation, if the Court were to permit the untimely disclosures, "it would have to reopen discovery in this nearly three-year-old case to afford [Plaintiffs] an opportunity to depose the additional witnesses." *Leong v. 127 Glen Head Inc.*, No. 13 Civ. 5528, 2016 WL 845325, at *5 (E.D.N.Y. Mar. 2, 2016)

Having weighed the relevant *Patterson* factors, the Court concludes that the "harsh sanction" of preclusion is not mandated for Defendants' second amended disclosures and interrogatory responses and Irlinskiy's declaration.[6] *Leong*, 2016 WL 845325, at *6. However,

---

[6] As to Wiener's purported "sham" declaration, the record does not provide an adequate basis for imposing sanctions under Rule 56(h) for declarations "submitted in bad faith or solely for delay." Plaintiffs' request to strike the declaration or otherwise sanction Defendants for submitting the declaration is, therefore, DENIED.

12

the Court shall reopen discovery for the limited purpose of permitting Plaintiffs to depose relevant witnesses about Pinnacle Managing Co. and its relationship to the named Defendants. The factors enumerated in *Thieriot*, on balance, support this course of action. Although Defendants oppose the request and would have to bear additional expense if discovery is re-opened, trial is not imminent, Plaintiffs have been reasonably diligent in obtaining discovery to date, and it is highly likely that the discovery will lead to relevant evidence. *See Thieriot*, 2010 WL 4038765, at *6. In addition, because the Court finds that Defendants' omissions were not substantially justified and no other circumstances make an award of expenses unjust, Defendants shall pay Plaintiffs' attorneys' fees for the additional discovery. *See* Fed. R. Civ. P. 37(b)(2)(C).

### III.   Cross-Motions for Summary Judgment

#### A. Summary Judgment Standard

Summary judgment is appropriate where the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of demonstrating the absence of a genuine dispute of material fact by citing evidence in the record. *See Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro, Vt.*, 287 F.3d 162, 165 (2d Cir. 2002). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). In doing so, the

non-moving party "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). "While Rule 56 does not obligate a court to perform an independent review of the record where a party does not adequately respond to a motion for summary judgment, nothing prevents the Court from exercising its discretion to conduct such a review." *Azor v. N.Y.C. Dep't of Corr.*, No. 10 Civ. 2235, 2012 WL 4809165, at *3 (S.D.N.Y. Oct. 9, 2012) (citation omitted). On a motion for summary judgment, courts view the record in the light most favorable to the non-moving party. *Koch*, 287 F.3d at 165.

    B.  FLSA "Employer"

The FLSA imposes liability on any "employer" who violates its minimum wage, overtime, and recordkeeping provisions. *See* 29 U.S.C. § 216(b), (e)(2). The FLSA's definition of "employer" is written with "striking breadth," reflecting Congress' intent to break from the common-law definitions of employment.[7] *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008). An employment relationship exists when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *accord Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961). Employment must be determined "on a case-by-case basis by review of the totality of the circumstances." *Irizarry*, 722 F.3d at 104. Because the inquiry is necessarily "fact-intensive," awards of summary judgment, "although sometimes appropriate, are

---

[7] The statute defines "employer" as an entity "acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). An "employee" is defined as "any individual employed by an employer." *Id.* § 203(e)(1). And to "employ" is "to suffer or permit to work." *Id.* § 203(g).

14

rare." *Gil v. Pizzarotti, LLC*, No. 19 Civ. 3497, 2021 WL 1178027, at *6 (S.D.N.Y. Mar. 29, 2021).

The Second Circuit has articulated two primary versions of the economic realities test: the formal-control test and the functional-control test. *See Greenawalt v. AT&T Mobility LLC*, 642 F. App'x 36, 37 (2d Cir. 2016) (summary order). These tests "state no rigid rule" but instead provide a set of factors to "ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield*, 537 F.3d at 143. In determining whether a defendant exerted formal control, courts examine "whether the alleged employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and methods of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003) (using the term "formal control" to describe the *Carter* test). A court may also find that, "even in the absence of the formal control measured by the *Carter* factors," an entity has "functional control over workers." *Zheng*, 355 F. 3d at 72.

"An individual may simultaneously have multiple employers for purposes of the FLSA, in which event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA." *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (cleaned up).[8] And, "[o]fficers and owners of corporations may be deemed employers under the FLSA where the individual has overall operational control

---

[8] Although *Martin* quotes 29 C.F.R. § 791.2, which has been rescinded by the Department of Labor, Second Circuit precedent "recognize[s] the possibility of joint employment for purposes of determining FLSA responsibilities." *Barfield*, 537 F.3d at 141. And, there is no right to contribution or indemnification under the FLSA. *Herman*, 172 F.3d at 143–44. Therefore, *Martin* still accurately states FLSA law.

of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions.'" *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003) (citation omitted); *accord Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013).

In addition, multiple corporate entities can be held liable as an FLSA employer "based on the theory that they operate as a single enterprise with significant interrelation of operations." *Apolinar v. R.J. 49 REST., LLC*, No. 15 Civ. 8655, 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016). Courts in this District have applied this "single integrated enterprise" test to "assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014). "Under this standard, courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* "The existence of an enterprise is a threshold issue that determines the applicability of the FLSA to a particular employee, while being an 'employer'—or a 'joint employer' as the case may be—determines the scope of liability under the Act." *Gordon v. Gen. Prop. Mgmt. Assocs., Inc.*, 496 F. Supp. 3d 830, 839 (S.D.N.Y. 2020).

C. Application

Defendants primarily argue that "a reasonable factfinder could not determine that Defendants are Plaintiffs' 'employers'" under the FLSA for two reasons. Def. MSJ Mem. at 14. First, they contend that Plaintiffs are not employed by the property management company and are instead employed either "by the condominium owners in the residential buildings where they work or worked," or by the "corporate entities that own" the buildings. *Id.* at 14. But, the "employers" formally listed on Plaintiffs' employment agreements and pay records do not end

16

the inquiry, and Defendants ignore the possibility that Plaintiffs could have multiple employers. *See id.* at 22. As the Supreme Court held in *Falk v. Brennan*, a property management company that wields "substantial control of the terms and conditions of the work" of building employees is a joint employer of those employees under the FLSA. 414 U.S. 190, 195 (1973); *see also Gordon*, 496 F. Supp. 3d at 840–81 (citing *Falk* and holding that a management company that "merely ma[d]e recommendations to the owners with respect to key decisions" was nonetheless an FLSA employer).

Here, the property management company run by Wiener does far more than merely "make recommendations" to property owners. *Gordon*, 496 F. Supp. 3d at 840. Defendants concede that Pinnacle Managing Co.—the non-party—sets overtime and timekeeping policies and maintains superintendents' timesheets. Def. 56.1 ¶ 87; Pl. 56.1 ¶ 38 and 142 ¶ 1; *see Gordon*, 496 F. Supp. 3d at 840 (noting that a property management company's administration of timesheets is "some evidence that [the company] was responsible for maintaining his employment records"). Pinnacle Managing Co. also employs the property managers that oversee the superintendents. Pl. 56.1 ¶ 7; *see Herman*, 172 F.3d at 140 (finding that an employer had "operational control" where the employer hired the managerial staff who were in charge of plaintiffs). And, Defendants concede that Wiener, in his role at Pinnacle Managing Co., "ultimately" approves overtime requests, "has the authority to hire and fire employees,"[9] "makes decisions regarding employee promotions[,] and approves vacation time requests for building superintendents." *Id.* ¶¶ 3–4, 40. In all, the record indicates that at least three of the *Carter* factors—the power to hire and fire, supervision, and maintenance of records—favor finding that

---

[9] In an affidavit, Wiener caveats that he cannot hire and fire employees of "condominiums[,] where those decisions are made by the relevant condominium board." ECF No. 78 ¶ 8.

Wiener, as managing member of Pinnacle Managing Co., is an employer of Plaintiffs.  The Court, therefore, GRANTS summary judgment to Plaintiffs and against Wiener on this issue.  *Cf. Irizarry*, 722 F.3d at 116–17 (affirming district court's grant of summary judgment for plaintiffs on question of joint employment where defendant satisfied two of the *Carter* factors).

Defendants next argue that even if Pinnacle Managing Co. (the non-party) employed Plaintiffs, Pinnacle Group (the named Defendant) does not.  The Court disagrees.  The fact that Wiener is the "managing member" of each suggests that Pinnacle Managing Co., Pinnacle Group, and Wiener may operate as a single integrated enterprise and should be treated as a single employer for FLSA purposes.  But, "common management" is only one of four factors to consider in determining enterprise status, *Juarez*, 29 F. Supp. 3d at 367, and—for the reasons discussed *supra*—the record is otherwise underdeveloped regarding the relationship between Pinnacle Managing Co. and Defendant Pinnacle Group.  Accordingly, the Court finds that summary judgment on this issue in favor of either Plaintiffs or Defendant Pinnacle Group is inappropriate at this juncture, and the parties' motions are DENIED.[10]

As discussed *supra*, the Court shall reopen discovery for the limited purpose of permitting Plaintiffs to depose relevant witnesses about Pinnacle Managing Co.  *See* Pl. Sanctions Mem. at 10–11.  Plaintiffs may then move to amend their complaint to add Pinnacle Managing Co. as an additional party, or to amend their summary judgment filings with any new facts.

---

[10] Plaintiffs' summary-judgment arguments not related to employer status are DENIED without prejudice to renewal.  The Court finds that there exist issues of material fact regarding whether Defendants are entitled to the good-faith defense or acted willfully, and how many overtime hours each Plaintiff performed without pay.  *See Eschmann v. White Plains Crane Serv., Inc.*, No. 11 Civ. 5881, 2014 WL 1224247, at *5 (E.D.N.Y. Mar. 24, 2014) ("[D]istrict courts in this circuit have generally left the question of willfulness to the trier of fact."); *Hernandez v. Sikka*, No. 17 Civ. 4792, 2020 WL 1083706, at *7 (E.D.N.Y. Mar. 6, 2020) (holding that where "the Court is unable to draw a reasonable inference about the hours worked[,] . . . [m]aterial issues of fact remain").

**CONCLUSION**

For the reasons stated above:

(1) Plaintiffs' motion for conditional class certification is GRANTED, and by **May 21, 2024**, Defendants shall produce to Plaintiffs a computer-readable list of all names, addresses, telephone numbers, and e-mail addresses for all potential opt-in plaintiffs, along with their primary language(s) spoken and their approximate dates of employment;

(2) Defendants' motion for summary judgment is DENIED;

(3) Plaintiffs' cross-motion for summary judgment is GRANTED with respect to Plaintiffs' employment by Wiener and as DENIED without prejudice to renewal on all other issues; and

(4) Plaintiffs' motion for sanctions is DENIED IN PART and GRANTED IN PART. Plaintiffs shall complete any additional discovery about Pinnacle Managing Co. by **July 2, 2024.** The costs of such discovery shall be borne by Defendants.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 120.

SO ORDERED.

Dated: May 7, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge